No. 24-3112

IN THE

# United States Court of Appeals for the Third Circuit

SHERICE SARGENT, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILD; MICHELE SHERIDAN, INDIVIDUALLY AND AS NEXT FRIEND OF HER MINOR CHILD; AND JOSHUA MEYER, INDIVIDUALLY AND AS NEXT FRIEND OF HIS MINOR CHILD,

*Plaintiffs-Appellants,*

v.

THE SCHOOL DISTRICT OF PHILADELPHIA, ET AL.,

*Defendants-Appellees,*

On Appeal from the United States District Court
for the Eastern District of Pennsylvania, Philadelphia Division
Case No. 2:22-CV-01509-CFK
The Honorable Chad F. Keeney

## BRIEF OF DEFENDANTS-APPELLEES

JOHN W. BORKOWSKI
ALEKSANDRA O. RUSHING
**HUSCH BLACKWELL LLP**
120 South Riverside Plaza, Ste. 2200
Chicago, IL 60606
Phone: (312) 655-1500
Fax: (312) 655-1501
john.borkowski@huschblackwell.com
aleks.rushing@huschblackwell.com

LYNN R. RAUCH
**THE SCHOOL DISTRICT OF
PHILADELPHIA**
440 N. Broad St., Ste. 313
Philadelphia, PA 19130
Phone: (215) 400-4120
Fax: (215) 400-4121
lrauch@philasd.org

*Counsel for Defendants-Appellees*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Third Circuit Local Appellate Rule 26.1.1, counsel for Appellees certify that no party to this appeal is a subsidiary or affiliate of a publicly owned corporation and no publicly owned corporation that is not a party to this appeal has a financial interest in the outcome.

/s/ *John W. Borkowski*
John W. Borkowski

*Counsel for Defendants-Appellees*

## STATEMENT REGARDING ORAL ARGUMENT

Appellees believe that this case turns on straightforward factual issues and, therefore, can and should be resolved on the briefs and without oral argument. In the event, the Court grants oral argument, Appellees request equal time to address Appellants' arguments.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT........................................ ii

STATEMENT REGARDING ORAL ARGUMENT ........................... iii

TABLE OF AUTHORITIES.................................................. vi

JURISDICTIONAL STATEMENT ..........................................1

STATEMENT OF ISSUES ....................................................2

STATEMENT OF THE STANDARD OR SCOPE OF REVIEW
FOR EACH ISSUE ON APPEAL ...........................................3

INTRODUCTION.................................................................4

STATEMENT OF THE CASE................................................9

    I.    RELEVANT FACTS.................................................9

        A.    Appellees .................................................9

        B.    Appellants ...............................................9

        C.    Student Assignment in the District ............................11

        D.    The Admissions Process for Criteria-Based Schools
            Prior to 2022...............................................12

        E.    The 2022 Admissions Process .....................................14

    II.    PROCEDURAL HISTORY......................................22

    III.    RULINGS PRESENTED FOR REVIEW..............................26

SUMMARY OF THE ARGUMENT ....................................27

ARGUMENT ..................................................................31

    I.    The District Court correctly determined that Appellants
        fail to raise a genuine dispute over whether the 2022
        Admissions Process disproportionately impacted White
        and Asian students when compared to Black and
        Hispanic students...............................................33

A.     Appellants' data is inaccurate, incomplete and legally insufficient..........................................................33

B.     Appellees' data demonstrates that the 2022 Admissions Process had a race-neutral impact...........41

C.     The record contains no other evidence of racially discriminatory impact..................................................43

II.     Because the record evidence establishes that the changes to the 2022 Admissions Process were not motivated by a discriminatory intent or purpose, the District Court's ruling should be affirmed. .........................44

A.     There is no evidence that the changes to the 2022 Admissions Process had a racially disproportionate impact. ..........................................................................46

B.     The historical background of the decision to change the 2022 Admissions Process further indicates the lack of discriminatory intent. ...............47

C.     The relevant legislative or administrative history of the decision to change the 2022 Admissions Process also supports the District Court's conclusion on intent. ....................................................51

D.     Appellants' reliance on out-of-context evidence of District employees' personal beliefs and mischaracterized documents unrelated to the 2022 Admissions Process cannot save their unsupported intent argument. .........................................................55

III.     The 2022 Admissions Process Satisfies Rational Basis Review ...................................................................63

**CONCLUSION**.........................................................................63

**CERTIFICATE OF BAR MEMBERSHIP**........................................65

**CERTIFICATE OF COMPLIANCE**................................................66

**CERTIFICATE OF SERVICE**........................................................67

# TABLE OF AUTHORITIES

**Page(s)**

## Federal Cases

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)................................................................3

*Antonelli v. N.J.*,
419 F.3d 267 (3d Cir. 2005) ...............................................45

*Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm.*
*of City of Bos.*,
996 F.3d 37 (1st Cir. 2021) ................................ 40, 42, 45, 48

*Boston Parent Coalition for Academic Excellence Corp. v.*
*School Committee for City of Boston*,
89 F.4th 46 (1st Cir. 2023),
*cert. denied*, 145 S. Ct. 15 (2024)....................... 36, 50, 52, 53

*Coalition for TJ v. Fairfax County School Board*,
68 F.4th 864 (4th Cir. 2023),
*cert. denied*, 218 L. Ed. 2d 71 (Feb. 20, 2024) .......... 34, 35, 36, 50

*Doe ex rel. Doe v. Lower Merion Sch. Dist.*,
665 F.3d 524 (3d Cir. 2011) ......................................... passim

*Hunt v. Cromartie*,
526 U.S. 541 (1999)..............................................................31

*Mall Chevrolet, Inc. v. General Motors LLC*,
99 F.4th 622 (3d Cir. 2024).................................................3

*Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*,
551 U.S. 701 (2007)......................................................38, 45

*Pers. Adm'r of Mass. v. Feeney*,
442 U.S. 256 (1979)............................................................44

*Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Comm. Proj., Inc.*,
576 U.S. 519 (2015)............................................................45

*U.S. v. Frazier*,
981 F.2d 92 (3d Cir. 1992) ................................................32

*Viera v. Life Ins. Co. of N. Am.*,
642 F.3d 407 (3d Cir. 2011) ...............................................3

*Village of Arlington Heights v. Metro. Hous. Dev. Corp.*,
   429 U.S. 252 (1977)........................................................................ passim

*Yick Wo v. Hopkins*,
   118 U.S. 356 (1886)................................................................................31

## Federal Statutes

28 U.S.C. § 1291 ........................................................................................1

28 U.S.C. § 1331 ........................................................................................1

42 U.S.C. § 2000d .....................................................................................1

U.S. Const. amend. XIV § 1......................................................................31

## Federal Rules

Fed. R. Civ. P. 56(c) ..................................................................................3

# JURISDICTIONAL STATEMENT

The District Court had subject matter jurisdiction over Appellants' claims pursuant to 28 U.S.C. § 1331 (federal question) because such claims were asserted pursuant to the Fourteenth Amendment to the U.S. Constitution and Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq*. On October 11, 2024, the District Court entered its Order granting Appellees' motion for summary judgment on all claims. Appx3–41. The District Court's order is a final decision within the meaning of 28 U.S.C. § 1291. *See id.* Appellants filed their notice of appeal with the District Court on November 7, 2024. Appx1. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1291.

# STATEMENT OF ISSUES

The issues on appeal are as follows:

1.      Did the District Court correctly conclude that there is no genuine issue of material fact with respect to Appellants' unsupported claim that the 2022 Admissions Process had a racially discriminatory impact?

2.      Did the District Court correctly conclude that there is no genuine issue of material fact with respect to Appellants' unsupported claim that the 2022 Admissions Process was enacted with racially discriminatory intent?

## STATEMENT OF THE STANDARD OR
## SCOPE OF REVIEW FOR EACH ISSUE ON APPEAL

This Court reviews "a District Court's grant of summary judgment de novo, applying the same standard the District Court applied." *Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011). Summary judgment is proper if the movant demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). An issue is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Mall Chevrolet, Inc. v. General Motors LLC*, 99 F.4th 622, 631 (3d Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, (1986)). And "[a] fact is material if its resolution 'might affect the outcome of the suit under the governing law.'" *Id.*

## INTRODUCTION

If Appellants' claims of rampant racial discrimination in the admissions process for The School District of Philadelphia's (the "District" or "Appellees") criteria-based public high schools were accurate surely they could have found evidence to support it after more than a year and a half of discovery. They did not. Instead, Appellants' brief, like their papers below, seeks to hide this under a patchwork of colorful but empty rhetoric knit together with snippets of irrelevant testimony and documentary evidence.[1] The summary judgment process exists precisely to unravel the tangled threads of such flimsy disguises. This is what Judge Chad F. Kenney of the United States District Court for the Eastern District of Pennsylvania ("Judge Kenney" or "the District Court") meticulously did, and what this Court should do.

In 2021, the District made changes to its admissions process for the 2022–23 school year at all criteria-based high schools, including the four

---

[1] The Introduction to Appellants' Brief is replete with unsupported statements and purported quotations that are offered without a single citation to the record. *See* Appellants' Br. (Doc. 26), at 6 (ostensibly quoting terms like "antiracism" and "equity" and phrases like "too black," "not black or Hispanic enough," and "underrepresented zip codes" without any citations to the record).

at issue in this case (the "2022 Admissions Process").[2] The District did so to address a number of problems it identified in its previous process. The District changed the 2022 Admissions Process by centralizing the selection process and incorporating a lottery system to reduce the subjectivity that previously resulted in individual schools selecting some students who did not meet the eligibility criteria in the past. In addition, the District began assigning a "preference" for eligible applicants residing within six zip codes which historically had the lowest rates of enrollment at the four criteria-based schools at issue. These changes were not made—as Appellants repeatedly and falsely claim—for the purpose of "racial balancing" or for any racially discriminatory purpose at all, but rather to promote District-wide standardization in admissions processes, enhance objectivity and fairness in admissions decisions, and increase access to educational opportunities for eligible students. Moreover, the District did not abandon its "merit-based admissions program," as Appellants repeatedly and falsely claim. Instead, the

---

[2] Those four criteria-based schools are Academy at Palumbo ("Palumbo"), George Washington Carver High School of Engineering and Science ("Carver"), Central High School ("Central"), and Julia R. Masterman High School ("Masterman"). Appx4.

District raised the standards for Palumbo, Carver, Central and Masterman.[3]

As a result, this case is simply not what Appellants, through distortion and misrepresentation of the record, portray it to be.[4] As much as Appellants want it to, this case does not present the question of whether a facially neutral policy adopted to intentionally alter the racial and ethnic composition of public-school enrollments violates Title VI, the Fourteenth Amendment, and the Pennsylvania Constitution (assuming it has a racially discriminatory effect). First, there is no evidence that the purpose of the policy was "racial balancing."[5] Race was not considered

_____

[3] Contrary to Appellants' claim that the District lowered the academic requirements for the 2022 Admissions Process, the record is clear that the District actually raised them. *See* Appx12–13; Appx1240, Appx1245–46; Appx1269; Appx1328; Appx1334–35; Appx1358.

[4] Appellants appear to advance two conflicting theories of discrimination. On one hand, they assert the District engaged in "racial balancing." Appellants' Br. (Doc. 26), at 6, 35, 39, 44, 46, 51. On the other, they claim the changes to the 2022 Admissions Process were intended to specifically benefit Black and Hispanic students. *Id.* at 44, 48–49. While neither of these theories is supported by the record, their inherent contradictions are noteworthy. It is logically impossible for the District to simultaneously intend to achieve racial balancing, while also specifically benefitting Black and Hispanic students in the admissions process.

[5] Appellants do not (and cannot) argue that the challenged process was not facially neutral: A student's race had no impact on whether a student could apply to criteria-based schools, whether a student was eligible for

when the District designed and implemented the 2022 Admissions Process. The adoption of a centralized lottery also was not motivated by any racially discriminatory purpose, but by a desire for more objectivity, fairness, and expanded opportunity. Nor was race a factor in the selection of the zip codes afforded lottery preference.[6] Rather, the zip codes were identified because of historically low enrollment rates among eligible students.

Not surprisingly, given the District's lack of any racially discriminatory purpose in adopting the 2022 Admissions Process, there is no evidence that it had a discriminatory impact. Rather, the success rates of all racial and ethnic groups under the policy were comparable and the racial compositions of the criteria-based schools varied widely.

Appellants are thus unable to withstand summary judgment. Because there is no evidence of racially discriminatory intent in the adoption of the 2022 Admissions Process and no evidence that it had a

---

criteria-based schools, whether a student received preference or priority in the lottery, or whether the student ultimately received an offer of admission.

[6] Appx670 (Jubilee Dep. at 181:20–23); Appx677 (*id.* at 188:3–7); *see also* Appx613 (*id.* at 124:1–8).

discriminatory effect, Appellants resort to reliance on selective quotations and misrepresentations about unrelated documents in which the District generally denounces racism and discrimination. Similarly, they cherry-pick deposition testimony unrelated to the 2022 Admissions Process, but instead about the personal beliefs of several District employees who personally oppose racism and support equity. As Judge Kenney found, however, none of this creates a genuine issue of material fact as to discriminatory purpose. Furthermore, the District Court correctly concluded that Appellants' incomplete demographic data and simplistic analysis of that data fail to create a genuine issue of material fact as to discriminatory impact.

This Court should affirm.

## STATEMENT OF THE CASE

## I.   RELEVANT FACTS

### A.   *Appellees*

Appellees are the District, members of the District's Board of Education, and several of its administrators. Dr. William Hite served as the District's Superintendent between 2012 and June 16, 2022. Appx863, ¶ 4. Dr. Hite approved the changes to the 2022 Admissions Process. Appx13. Dr. Sabriya Jubilee, who became the District's Chief of Equity, Office of Diversity, Equity, and Inclusion in July 2021, and was involved in developing some of the changes to the 2022 Admissions Process. Appx863, ¶ 5; Appx13. Ms. Karyn Lynch, the District's Chief of Student Support Services, oversaw the high school admissions process and was responsible for reviewing and making changes to the process in any given year, including for the 2022–23 school year. Appx13; Appx854.

### B.   *Appellants*

Appellants are the parents of three former District students who were waitlisted at their first choice of school after applying to ninth grade

in the 2022 Admissions Process.[7] Appellants' Br. (Doc. 26), at 30–36.[8]

Sherice Sargent is the mother of a Black female student who wanted to

attend Carver.[9] *Id.* at 30–31. Michelle Sheridan is the mother of a "non-

[W]hite (bi-racial)" student who sought to attend ninth grade at Palumbo.

*Id.* at 32–33. Joshua Meyer is the father of a White student who applied

to Masterman, Palumbo, and Central in the 2022 Admissions Process,

and was waitlisted at Masterman. *Id.* at 33–35; Appx870.

---

[7] Each of Appellants' children applied to and received offers to other criteria-based schools in the District but rejected those offers. Sherice Sargent confirmed that her daughter was attending Little Flower Catholic High School for Girls. Appx869; Appx940. Joshua Meyer testified that his son enrolled at Springside Chestnut Hill Academy, a private preparatory high school. Appx870; Appx942; Appx1015. Michelle Sheridan stated that her son elected to attend String Theory Charter School, a public charter school in Philadelphia, for ninth and tenth grades and planned to attend Ephrata High School in Lancaster County, Pennsylvania, beginning in fall 2024. Appx869; Appx1070; Appx1075.

[8] The internal pagination of Appellants' Brief differs from the file-stamped page numbers. All citations to Appellants' Brief herein correspond to the file-stamped page numbers at the top of each page.

[9] Although not addressed by the District Court, Sherice Sargent's standing to raise this particular racial discrimination claim is questionable given that the primary theory of Appellants' case seems predicated on the notion that the 2022 Admissions Process somehow was intended to and did discriminate against White and Asian students *in favor* of Black and Hispanic students.

## C. *Student Assignment in the District*

The District operates a system of public elementary, middle, and high schools in Philadelphia. Appx1194, ¶ 5. The District offers neighborhood high schools, citywide admissions high schools, and criteria-based high schools. Appx7–8; Appx864, ¶ 13. Neighborhood high schools are attended by students who fall within a designated geographic area. Appx864, ¶ 14. Citywide admissions high schools are open to all students regardless of geography, and admission to these schools is determined by lottery. Appx864, ¶ 15. Finally, criteria-based schools are open to all students regardless of geography, provided the students meet certain academic admissions criteria for eligibility, such as grades or attendance, which criteria vary by school. Appx7–8; Appx864, ¶ 16.[10]

---

[10] By the time of the 2021–22 admissions cycle (*i.e.*, a year prior to the changes to the 2022 Admissions Cycle), the District had already paused use of a standardized test, the Pennsylvania System of School Assessment ("PSSA"), to determine eligibility to criteria-based schools due to difficulties in administration caused by the COVID-19 pandemic. Appx683; Appx208 (Lynch Dep. at 28:21–25); Appx213 (*id.* at 33:15–18); Appx639–40 (Jubilee Dep. at 150:14–51:3). The decision to not use the PSSA was unrelated to the standardization, lottery, and zip code preference in the 2022 Admissions Process challenged here.

Only four of the District's criteria-based schools are implicated in this case.[11] Appx4.

### D. The Admissions Process for Criteria-Based Schools Prior to 2022

Prior to the 2022–23 school year, the District did not use a lottery for criteria-based schools. Appx666 (Jubilee Dep. at 177:2–8). Criteria-based schools had a range of criteria for eligibility. *Id.* (Jubilee Dep. at 177:9–16). Some criteria-based schools had unique subjective requirements, such as an audition, interview, essay, or project-based presentation. Appx210–11 (Lynch Dep. at 30:15–31:16). Previously, student applications were screened centrally before being sent directly to

---

[11] In the 2022 Admissions Process, the District had seventeen (17) criteria-based schools. Appx1329 (Arts Academy at Benjamin Rush High School); Appx1332 (William W. Bodine H.S. for International Affairs); Appx1337 (Creative and Performing Arts High School); Appx1345 (Franklin Learning Center High School); Appx1347 (Girard Academic Music Program); Appx1348 (Hill-Freedman World Academy High School); Appx1353 (Lankenau Environmental Science Magnet); Appx1359 (Motivation High School); Appx1362 (Northeast Medical, Engineering and Aerospace Magnet); Appx1363 (Northeast Pre-International Baccalaureate Diploma Program); Appx1365 (Parkway Center City Middle College); Appx1367 (Parkway Northwest HS for Peace and Social Justice); Appx1370 (Philadelphia High School for Girls); Appx1377(Walter B. Saul HS of Agricultural Sciences); Appx1381 (Science Leadership Academy); Appx1382 (Science Leadership Academy – Beeber Campus); Appx1391 (George Washington High School IB Diploma Program).

individual schools. Those schools then made their own admission decisions, either at the discretion of the principal or using a broader, school-based team, both of which also made subjective decisions about applicants and sometimes disregarded certain eligibility criteria. Appx223–24 (Lynch Dep. at 43:23–44:7); Appx573 (Jubilee Dep. at 84:4–12). Then, schools would notify the District's Central Office of their admission decisions. Appx666 (Jubilee Dep. at 177:9–19). As a result of admission decisions being made at the individual school level, some students who did not meet the eligibility criteria for certain schools were admitted at the expense of other students who did meet those criteria. *Id.* (Jubilee Dep. at 177:5–11).

The Pew Charitable Trusts conducted an independent study regarding the District's school admission process, including the process for admission into criteria-based schools (the "Pew Study"). ECF No. 86–1 ¶ 9; ECF No. 86–3 (Lynch Dep.) at 35:19–37:17. The Pew Study identified the following issues with the admissions process: (1) the criteria-based schools were admitting some students who *did not* meet the admissions criteria, like legacy students whose parents were alumni of a particular school, but not admitting other students who *did* meet the

criteria, ECF No. 86–1 ¶ 9(a); (2) qualified students in certain schools in certain parts of Philadelphia were less likely to apply to criteria-based schools, *id.* ¶ 9(b); (3) if qualified students from those parts of Philadelphia did apply, they were less likely to be considered, *id.* ¶ 9(c); and (4) if those students were given offers, they were less likely to accept them when compared with their peers in other neighborhoods, *id.* ¶ 9(d).

### E. *The 2022 Admissions Process*

The District has been continuously reviewing and making incremental changes to its school selection process for criteria-based schools for at least ten years. Appx854, ¶ 3 (citing Lynch Dep. 35:7–36:11). The 2022 Admissions Process was developed as part of an annual review of the school selection process that occurs in the District's normal course of business. Appx526–27 (Jubilee Dep. at 37:2–38:1); Appx645 (*id.* at 156:17–23). In developing the changes that would be adopted in the 2022 Admissions Process, the District also employed an "equity lens" to assess its past practices. Appx584–85 (Jubilee Dep. at 95:7–96:20); Appx645 (*id.* at 156:20); Appx502 (*id.* at 13:17–20) ("the equity lens is a tool that we use in the School District to help us assess to what degree a

particular policy or action will have equitable issues or concerns being raised.").

During this equity review, Dr. Jubilee led a group of decisionmakers through a series of questions and facilitated guided discussions. Appx502 (Jubilee Dep. at 13:21–23); Appx583–85 (*id.* at 94:6–96:20). This group was concerned that "there was no centralized process, schools had more autonomy in deciding how they were going to operationalize or practice the process and in some cases that had the potential to create inequities" in the 2021 Admissions Process. Appx638 (Jubilee Dep. at 149:8–12). These concerns mirrored ones identified years earlier by the independent Pew Study discussed above. Consequently, the group discussed potential changes. Appx583 (Jubilee Dep. at 94:8–20) (noting that all recommended changes to the school selection process were made by the group, not by Dr. Jubilee or her office). Neither the equity review nor the changes for the 2022 Admissions Process were intended to impact the racial demographics of any school. Appx525

(Jubilee Dep. at 36:16–21); Appx581–82 (*id.* at 92:19–93:9); Appx669 (*id.* at 180:9–10).[12]

As a result of this review and with the intent of creating a more centralized, objective, and fair process, the District made a number of changes for the 2022 Admissions Process. For example, the District replaced school-by-school admissions determinations with a centralized application process for all criteria-based schools.[13] Appx571–72 (Jubilee Dep. at 82:23–83:14). This was intended to standardize admissions decisions across schools and mitigate against subjectivity of individual

---

[12] Throughout her testimony, Dr. Jubilee was clear that neither the equity review process nor the concept of equity is specifically limited to race. Appx637 (Jubilee Dep. at 148:13–24); Appx653 (*id.* at 164:11–15). Equity may implicate a number of factors, including socioeconomic status, geographical location, English language proficiency, gender identity, or religion, depending on the circumstances. Appx635–37 (Jubilee Dep. at 146:23–148:23).

[13] Race is not—nor has it ever been—a criterion for eligibility or admission at any criteria-based school. Appx570 (Jubilee Dep. at 81:13–16).

principals or school-based teams.[14] Prior to 2022–23, subjectivity (regardless of race) had long been a concern.[15]

The District also maintained or raised the academic eligibility criteria at each of the four criteria-based schools in the 2022 Admissions Process. *See* Appx5; Appx12–13 (chart depicting the eligibility criteria at each of the four schools in 2021–22 and 2022–23). Appellants misleadingly imply that the District eliminated academic criteria for these four schools in the 2022 Admissions Process. The opposite is true; for example, a student with one C in a major subject would have been

---

[14] Appx572–73 (Jubilee Dep. at 83:16–84:12); Appx638 (Jubilee Dep. at 149:8–12) ("[B]ecause there was no centralized process [before the 2022 Admissions Process], schools had more autonomy in deciding how they were going to operationalize or practice the process and in some cases that had the potential to create inequities."); Appx219–21 (Lynch Dep. at 39:23–41:19) (noting this change was made to ensure "objective criteria for eligibility"); Appx230–31 (Lynch Dep. at 50:6–51:2).

[15] Appx231 (Lynch Dep. at 51:5–23) ("[W]e had a much more subjective process where who knows who in a school made decisions. It would have been biased against any student who applied in the process who could be considered qualified at one school and have the same academic credentials and be disqualified at another school. Any applicant was subject to that bias."); Appx604 (Jubilee Dep. at 115:15–23); Appx612 (*id.* at 123:4–18) (discussing the emergence of "socially constructed feeder patterns" under the 2021 Admissions Process); Appx668–69 (*id.* at 179:20–180:3) (citing anecdotal evidence of students gaining admission to criteria-based schools who did not meet the eligibility criteria).

eligible for admission to Carver, Masterman, Palumbo, and Central in 2021-22, but not under the heightened criteria in 2022–23, which required students to have A's and B's in all major subjects. Appx12–13; Appx1245; Appx1334; Appx1269; Appx1358; Appx1240; Appx1328; Appx1246; Appx1335.

Under the centralized 2022 Admissions Process, a computerized system first determined whether students met the eligibility criteria for a particular school. Appx220 (Lynch Dep. at 40:8–11). Once students were screened for eligibility, using these rigorous academic criteria, the eligible students were automatically entered into a lottery, which randomly assigned students to available seats.[16] Appx222 (Lynch Dep. at 42:3–5); Appx571 (Jubilee Dep. at 82:10–22).

---

[16] The District made additional changes to the 2022 Admissions Process that have minimal relevance apart from the fact that they were imposed for purposes of standardization and objectivity. For example, letters of recommendation and interviews were no longer required by criteria-based schools. Appx683. In addition, "a [D]istrict administered writing sample [was] provided as an additional data point of eligibility." The writing sample was centrally administered and scored by a computer program called "MI Write." Appx866 ¶ 23. Each of the four criteria-based schools affected by the changes to the 2022 Admissions Process established grade cut-offs for eligibility based on MI Write scores, as well as a student's course grades. *Id.*; Appx1791 ¶ 37; *see also* Appx1198 ¶ 36.

At Masterman, Central, Palumbo, and Carver, the District also added a zip code preference to the lottery process for ninth grade students.[17] Appx228 (Lynch Dep. at 48:16–18). Applicants from preferred zip codes received priority in the lottery, provided they met the criteria for eligibility. Appx226–28 (Lynch Dep. at 46:24–48:6). This meant they were the "most likely" to be admitted, subject to seat availability. Appx228 (Lynch Dep. at 48:2–6). After the zip code preference was applied, the lottery randomly assigned the remaining seats at each of the four schools to eligible applicants regardless of zip code. Appx229 (Lynch Dep. at 49:3–9); Appx671 (Jubilee Dep. at 182:19–23). Other than those within the six zip codes, academically eligible students in the lottery had

---

[17] Certain changes to the 2022 Admissions Process applied to all criteria-based schools, while other changes applied specifically to Carver, Central, Masterman, and Palumbo. The changes that affected all criteria-based schools were (1) the computerized lottery system; (2) centralized management of the school selection process; (3) letters of recommendation and interviews are no longer required for eligibility or admission. Appx1313. The zip code preference only applied to Carver, Central, Masterman, and Palumbo. *Id.* The computer-graded writing sample was imposed at Carver, Central, Masterman, and Palumbo, as well as Parkway Center City Middle College, another criteria-based school. Appx1313, 1334, 1335, 1358, 1365.

an equal opportunity for admission to the four schools. Appx671 (Jubilee Dep. at 182:19–23).

The District selected the six preferred zip codes because they historically had the lowest rates of enrollment among eligible students in the criteria-based school selection process. Appx233–34 (Lynch Dep. at 53:25–54:15); Appx612 (Jubilee Dep. at 123:4–18); Appx641 (*id.* at 152:5–24); Appx670 (*id.* at 181:13–19). In other words, these areas were home to the greatest concentration of students who met the academic and attendance requirements to attend criteria-based schools, but for some reason were not enrolling. *See generally id.*

The preferred zip codes were identified through a review by the District's Office of Research & Evaluation of data reflecting the enrollment of eligible students in school selection over a three-year period. Appx640–41 (Jubilee Dep. at 151:17–152:24). Race played no role in the selection of the preferred zip codes. Appx670 (Jubilee Dep. at 181:20–23); Appx677 (*id.* at 188:3–7); *see also* Appx613 (*id.* at 124:1–8) (Dr. Jubilee testified that she was unaware of the racial demography of the selected zip codes).

The changes in the 2022 Admissions Process achieved the District's goal of increasing enrollment among eligible students (of any and all races) from the preferred zip codes that historically had been underrepresented. The following table reflects total student enrollment and enrollment from students residing in the six preferred zip codes for each criteria-based school at issue in the 2021–22 school year compared to the 2022–23 school year, the first year the 2022 Admissions Process was implemented:

|  | Palumbo | Carver | Central | Masterman |
|---|---|---|---|---|
| 2021–22 Total Enrollment | 279 | 194 | 601 | 114 |
| Enrollment from Preferred Zip Codes | 15 | 25 | 34 | 2 |
| Percentage of Enrollment from Preferred Zip Codes | 5.38% | 12.89% | 5.66% | 1.75% |
| 2022–23 Total Enrollment | 372 | 248 | 619 | 113 |
| Enrollment from Preferred Zip Codes | 29 | 37 | 91 | 10 |
| Percentage of Enrollment from Preferred Zip Codes | 7.8% | 14.92% | 14.7% | 8.85% |

*See* Appx141 (Table C to Dr. Tonya Wolford Decl.). Notably, the changes adopted by the District increased both the number of enrolled students from the preferred zip codes and the percentage of total enrollment from those zip codes attending each school.

The 2022 Admissions Process also resulted in students from all racial and ethnic groups having a comparable success rate in gaining admission to these criteria-based schools. Appx125–45. While Appellants rely exclusively on the fact that the percentage of students offered admission from various racial and ethnic groups changed between 2021 and 2022, Dr. Wolford's analysis demonstrated that eligible applicants of various racial and ethnic groups in 2022 were admitted roughly in proportion to their share of the eligible applicant pool. *Id.*

## II.   PROCEDURAL HISTORY

On April 19, 2022, Appellants sued the District and several of its employees, alleging the 2022 Admissions Process violated Title VI, the Equal Protection Clause of the Fourteenth Amendment, and the Pennsylvania Constitution. Appx20 (noting that all the claims "turn[ed] upon the same analysis and standards used to evaluate federal Equal Protection claims").

On June 3, 2022, Appellants moved for a preliminary injunction to prevent the District from implementing the changes to the 2022 Admissions Process. Appx16 (citing ECF No. 32 at 1). After an in-person hearing, the District Court correctly determined that Appellants "failed to show a reasonable probability that the changes to the admissions policy were motivated by a racially discriminatory purpose." Appx16–17 (citing ECF No. 50, at 10–17; ECF No. 51). Appellants contended that Indicator 4.1 of the "Goals & Guardrails" document was "as close to a smoking gun as can be imagined." Appx6 (citing ECF No. 41 at 1; *see also* ECF No. 50 at 2). At the preliminary injunction hearing, Judge Kenney specifically found that Appellants' "characterization" of Indicator 4.1 "was 'contrary to its plain language' and read out of context." *Id.* (citing ECF No. 50 at 12). "More specifically, by its plain language, the Indicator did not address increasing the number of Black or Hispanic students who would be *admitted* to or *attend* criteria-based schools; instead, it provided that the number of Black or Hispanic students who would be *qualified* to attend criteria-based schools would increase." *Id.* (citing ECF No. 50 at 12–13) (emphasis in original). "When read in context, it became clear that the Indicator was used to measure and understand Black and Hispanic

student achievement—not set racial quotas for admittance to the criteria-based schools." *Id.* The District Court then concluded that Appellants' "interpretation of the . . . Goals and Guardrails document" as a "smoking gun" was "merely smoke." Appx17 (citing ECF No. 50 at 1).

Appellants appealed the denial of the preliminary injunction to this Court but then sought to voluntarily dismiss their appeal, which was granted by this Court on May 12, 2023. Appx17–18 (citing ECF No. 59). While that appeal was pending, on October 13, 2022, Appellants moved the District Court to certify a class. Appx17 (citing ECF No. 57). Although the District Court denied Appellants' Motion for Class Certification, it did so without prejudice to re-file following a potential decision from this Court on their appeal that had been pending at the time. *Id.* (citing ECF No. 58). On July 12, 2023, Appellants filed a letter indicating that they would not seek class certification. Appx18 (citing ECF No. 66).

The parties completed fact discovery by May 16, 2024. Appx17–18 (citing ECF Nos. 57, 58, 80). No party retained an expert witness. Appx18 (citing ECF No. 86 at 13, 25; ECF No. 94 at 18–19). Appellees moved for summary judgment on June 6, 2024, and the District Court held oral argument on August 2, 2024. Appx18 (citing ECF No. 86, 86–1, 86–2,

100). On October 11, 2024, after evaluating all the evidence and argument, Judge Kenney granted summary judgment to Appellees. Appx3–41.

The District Court concluded there was no genuine issue of material fact regarding either discriminatory impact or discriminatory purpose in the development and application of the 2022 Admissions Process. With respect to discriminatory impact, the District Court found that Appellants' reliance on a simplistic "before-and-after" comparison of admissions data failed to demonstrate that the 2022 Admissions Process disproportionately affected any racial group, as a proper analysis would need to compare the success rates (admissions offers versus applications) across racial groups, which Appellants did not do. Appx23–31.

With respect to discriminatory purpose, the District Court determined that evidence, including testimony and District documents, uniformly showed that the 2022 Admissions Process was race-neutral and motivated by legitimate goals, such as increasing objectivity and improving access for eligible students from underrepresented geographical areas. Appx31–38. Finally, the District Court concluded that the 2022 Admissions Process passed rational basis review, as it was

rationally related to the legitimate interest of increasing equitable access to criteria-based schools for eligible students. Appx38–40.

## III.  RULINGS PRESENTED FOR REVIEW

The sole ruling presented for review is the District Court's grant of summary judgment to Appellees on Appellants' racial discrimination claims, as Appellants failed to establish sufficient evidence of intent or impact. *See* Appx3–41 (the District Court's order and opinion).

## SUMMARY OF THE ARGUMENT

The District Court correctly found that Appellants' challenges to the 2022 Admissions Process, which Appellants concede is facially race-neutral, is subject to a rational basis review and easily passes muster under that standard.

Appellants' only focus on appeal is the appropriate legal standard; they do not argue that the 2022 Admissions Process fails rational basis review. Appellants' contention that strict scrutiny should apply is misplaced because they fail to provide sufficient evidence to create a genuine dispute that the 2022 Admissions Process had either a racially discriminatory impact or was adopted with racially discriminatory intent. Appellants bear the burden of providing evidence of both prongs to justify application of strict scrutiny, and they fail to do so with respect to either requirement.

Appellants attempt to rely on data comparing the racial composition of students that were offered admission in the 2021–22 school year to that in the 2022–23 school year, the first school year subject to the 2022 Admissions Process. But their proffered data is incomplete and legally insufficient as a matter of law. Notably,

Appellants' data lacks critical context, does not account for numerous variables and relevant factors (such as, most obviously, the number of students from different racial and ethnic groups who applied in each year), and thus fails to establish a discriminatory impact. In fact, the only data that is legally sufficient was provided by Appellees and reflects that the 2022 Admissions Process had a race-neutral impact. Appx125–135 (Dr. Wolford Decl.); Appx145 (Table E to Dr. Wolford Decl., showing proper analysis of success rate for the 2022 Admissions Process).

Appellants do not offer any actual evidence of a racially discriminatory impact and therefore fail to create a genuine issue of material fact as to discriminatory impact. Appellants' data shows at most a change in the admissions offers under the 2022 Admissions Process, but it does not show that this change was in any way discriminatory or even statistically significant. As other Courts of Appeals have held, the critical question is not whether there was some change in the *status quo ante*, but whether the new policy favors members of a particular group on the basis of race. The District's unrebutted evidence makes clear that it does not.

Appellants also argue that the District somehow discriminated against certain racial groups by changing the academic standards (for students of all races) for the criteria-based schools, but they have no evidence to support that contention. Indeed, while Appellants incorrectly suggest the District lowered those standards to favor Black and Hispanic applicants, it actually raised them at each of the relevant schools.

Furthermore, Appellants fail to create a genuine dispute as to whether the 2022 Admissions Process was adopted with racially discriminatory intent. This is an independent basis for affirming the District Court's decision. None of the evidence Appellants rely on to attempt to prove discriminatory intent satisfies the Rule 56 standard. On the contrary, the relevant evidence demonstrates that the District adopted the 2022 Admissions Process as part of a standard, annual review and for purposes of addressing race-neutral, legitimate aims (specifically, removing subjective elements that historically had resulted in unfair admissions decisions and for more geographically equitable access to criteria-based schools). This is particularly true with respect to the identification of six preferred zip codes, which were selected solely

because they had the lowest rates of enrollment in criteria-based admissions among eligible students.

Faced with this overwhelming evidence of the District's actual intent, Appellants willfully misread documents and cite out of context snippets of testimony about the personal beliefs of some District employees. But none of the documents, statements, or testimony attributed to the District or its employees shows discriminatory intent in the development and adoption of the 2022 Admissions Process. Therefore, Appellants fail to meet their burden on this prong of the analysis as well.

As a result, rational basis review applies to the 2022 Admissions Process, and Appellants do not even attempt to argue that it is not satisfied. This Court, therefore, should affirm the District Court's grant of summary judgment.

# ARGUMENT

The Equal Protection Clause of the Fourteenth Amendment provides that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV § 1.[18] The Supreme Court has recognized three circumstances that show unconstitutional racial discrimination. First, intentional racial discrimination can be shown when "a law or policy explicitly classifies citizens on the basis of race." *Doe ex rel. Doe v. Lower Merion Sch. Dist.*, 665 F.3d 524, 543 (3d Cir. 2011) (citing *Hunt v. Cromartie*, 526 U.S. 541 (1999)). Second, intentional racial discrimination can be shown when a "facially neutral law or policy is applied differently on the basis of race." *Id.* (citing *Yick Wo v. Hopkins*, 118 U.S. 356 (1886)). Lastly, "a facially neutral law or policy that is applied evenhandedly" can still be racially discriminatory if it (1) has "a racially discriminatory impact" and (2) is "motivated by discriminatory intent." *Id.* (citing *Arlington Heights*, 429 U.S. 252); *see id.* at 546 ("To establish government action within the third

---

[18] Appellants brought racial discrimination claims pursuant to the Equal Protection Clause, Title VI, and the Pennsylvania Constitution. Appx20. As noted by the District Court, all of the claims "turn upon the same analysis and standards used to evaluate federal Equal Protection claims." *Id.*

alternative, a plaintiff is 'required to prove that the actions of . . . officials (1) had a discriminatory effect [or impact] and (2) were motivated by a discriminatory purpose.'")).

Here, Appellants concede that the 2022 Admissions Process is a facially neutral policy applied evenhandedly. And they concede that the 2022 Admissions Process did not explicitly classify applicants on the basis of race. Doc. 103, at 19. Appellants also agree that it was facially neutral and was not applied differently on the basis of race. *Id.*

Therefore, strict scrutiny applies here only if the 2022 Admissions Policy is motivated by a racially discriminatory intent or purpose *and* has a discriminatory effect. *Lower Merion*, 665 F.3d at 543–56 (citing *inter alia Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977)). Absent a racially discriminatory intent and effect, such a government action "is subject only to rational basis review." *Id.* at 551 (citing *U.S. v. Frazier*, 981 F.2d 92, 95 (3d Cir. 1992)). The rational basis standard is clearly satisfied here.

I.    **The District Court correctly determined that Appellants fail to raise a genuine dispute over whether the 2022 Admissions Process disproportionately impacted White and Asian students when compared to Black and Hispanic students.**

Appellants fail to establish that the 2022 Admissions Process had a racially discriminatory impact on students of any race. "To establish discriminatory impact in a racial discrimination case, [Appellants] must show that similarly situated individuals of a different race were treated differently." *Lower Merion*, 665 F.3d at 550. In other words, a plaintiff must prove that the challenged state action results in a "racially disproportionate impact:" that it "bears more heavily on one race than another." *Arlington Heights*, 429 U.S. at 265–66. The District Court correctly determined that Appellants fail to meet this burden.

A.    *Appellants' data is inaccurate, incomplete and legally insufficient.*

Appellants attempt to satisfy their burden by comparing the racial composition of students who received admissions offers to four schools (Palumbo, Carver, Central, and Masterman) for the 2021–22 academic year to the racial composition of those who received offers from the same schools after the adoption of the 2022 Admissions Process for the 2022–

23 academic year. Appx23–24. Their simplistic "before-and-after" methodology is insufficient to create a genuine issue of material fact.

Appellants' proffered data merely lists the year-to-year racial composition of students receiving offers the year before and the year of the 2022 Admissions Process. Appellants, however, fail to provide any further analysis, including, most critically, any comparison of the success rates of students by race and ethnicity.[19]

The District Court correctly considered this deficiency in light of recent decisions in analogous cases from the First and Fourth Circuits. Those decisions discuss in detail the appropriate analysis to determine the existence of discriminatory impact when student assignment plans are changed. In *Coalition for TJ v. Fairfax County School Board*, for example, the Fourth Circuit carefully considered the defendant school board's admissions policy for a selective magnet school. 68 F.4th 864 (4th

---

[19] Appellants also appear to take issue with other changes adopted in the 2022 Admissions Process, including the inclusion of a computer-graded essay component for applicants. *See* Appellants' Br. (Doc. 26) at 7, 42. However, Appellants provide no evidence or substantive argument that the District's inclusion of a computer-graded essay component to the 2022 Admissions Process had any sort of discriminatory impact on any racial or ethnic group. Indeed, the inclusion of the computer-graded essay requirement was applied to all applicants and is undeniably race-neutral.

Cir. 2023), *cert. denied,* 218 L. Ed. 2d 71 (Feb. 20, 2024). Like Appellants here, plaintiffs there relied on a flat comparison of the number of Asian students admitted before and immediately after the implementation of the challenged admissions policy. *Id.* at 880. The Fourth Circuit faulted the logic of the plaintiffs' analysis:

> [I]t would make little sense for us to use a prior government policy as the 'proper baseline' for scrutinizing a replacement version of the same. That approach would simply turn 'the previous status quo into an immutable quota,' thereby opening a new policy that might impact a public institution's racial demographics—even if by wholly neutral means—to a constitutional attack.

*Id.* at 880–81.

The Fourth Circuit explained that to properly analyze the possible existence of a discriminatory impact, there must be a comparison of the racial group's "success rate," meaning "an evaluation of a given racial or ethnic group's share of the number of applications to [a particular school] versus that group's share of the offers extended," both before and after the change in the admissions policy. *Id*. Plaintiffs were "obliged to show that, under the challenged admissions policy, Asian students face proportionally more difficulty in securing admission to [a particular school] than do students from other racial or ethnic groups." *Id.* Due to

this deficiency in the plaintiffs' data and analysis, the Fourth Circuit vacated the District Court's decision granting summary judgment to plaintiffs and remanded for entry of summary judgment in favor of the defendant school board.

The First Circuit reached a similar conclusion in *Boston Parent Coalition for Academic Excellence Corp. v. School Committee for City of Boston*, which involved another discrimination challenge to an admissions policy for three selective admissions schools. 89 F.4th 46, 51, 53 (1st Cir. 2023), *cert. denied,* 145 S. Ct. 15 (2024). The plaintiffs argued that "White and Asian students made up a smaller percentage of the students invited to join the Exam Schools under [the challenged admissions policy] than in the years before the [policy] was implemented." *Id.* at 57. The First Circuit followed the Fourth Circuit's approach and found the plaintiffs' argument and supporting data insufficient because it treated the previous status quo as "an immutable quota" that would render a race-neutral policy unconstitutional solely because the racial demographics were not identical to those under the prior policy. *Id.* at 58 (citing *Coal. for TJ*, 68 F.4th at 881).

Here, Appellants' "before-and-after" analysis and argument repeat the same critical mistake identified by the First and Fourth Circuits: They treat the racial composition of students admitted to the four criteria-based high schools in the 2021–22 school year (*i.e.*, the year prior to the 2022 Admissions Process) as an "immutable quota."[20] Indeed, reliance on Appellants' approach would make even less sense here, given the evidence that subjective elements of the prior system — wherein students who did not meet all criteria could be picked over students who did — had themselves been unfair. Therefore, as the District Court correctly concluded, the data presented by Appellants is insufficient to create a genuine dispute of material fact as to whether the 2022 Admissions Process had a discriminatory impact.

---

[20] If Appellants' argument on this point were accepted, any operational changes made by the District in an effort to improve the educational services and opportunities provided to students, including curriculum and course offering improvements — such as introducing classes in Algebra, a prerequisite to eligibility for Masterman and Central, at more K–8 and middle schools) or additional student resources (like improved technology at elementary schools) — could be deemed unconstitutional if they had any subsequent effect on schools' racial compositions. This perverse implication flowing from Appellants' argument underscores why the existing racial and ethnic composition of schools cannot be used as an "immutable quota" from which any deviation would require strict scrutiny or as evidence of race discrimination.

Appellants' purported evidence of discriminatory impact is insufficient to meet their burden for the additional reason that they focus only on the final outcomes of students who were offered admission without considering how many students from different racial groups applied during either the 2021–22 or 2022–23 academic years. Without accounting for the number of students who actually applied by race, Appellants cannot demonstrate any disproportion in the number of admitted students from any racial group. In other words, it is not possible to determine whether any racial group was admitted at a disproportionately higher rate than other groups without analyzing applicant data by race. Appellants fail to provide such data.[21]

---

[21] If anything, Appellants' data undercuts their argument, particularly with respect to Ms. Sargent. Appellants represent that Ms. Sargent is the mother of a Black student and that the 2022 Admissions Process resulted in a "significant decline in the number of [B]lack students enrolled at Carver." Appellants' Br. (Doc. 26), at 30–32. But Appellants also cite data indicating that for the 2022–23 school year, which was the first school year subject to the 2022 Admissions Process, the number of Black students who received admissions offers increased by 26%. *Id.* at 30. At best, this discrepancy reflects the shortcomings of Appellants' data and their failure to demonstrate a material dispute on this point. It also confirms that Ms. Sargent lacks standing. *See Lower Merion*, 665 F.3d at 542 (quoting *Parents Involved in Cmty. Schs. v. Seattle Sch. Dist. No. 1*, 551 U.S. 701, 719 (2007)). Because Ms. Sargent's daughter is Black and Appellants' core contention is that the 2022 Admissions Process unfairly benefitted Black and Hispanic students, Ms. Sargent would lack

Compounding these fatal flaws, Appellants' Brief misrepresents data in several respects. Most notably, Appellants incorrectly state admissions offers to Palumbo made to Hispanic, Multi-Racial, and White students for the 2022–23 school year at Palumbo. Appellants assert the District extended offers to 54 Hispanic, 25 Multi-Racial, and 51 White students, respectively. Appellants' Br. (Doc 26), at 25. Those figures directly contradict the actual data cited on the same page of Appellants' Brief, which shows 95 Hispanic, 48 Multi-Racial, and 151 White students received offers to Palumbo for the 2022–23 school year. *Id.* Consequently, Appellants' calculations regarding purported net changes and percentage changes for these racial groups at Palumbo are wrong. *Id.* at 26.[22]

standing under Appellants' own interpretation of their insufficient and incomplete data. With respect to standing, it should also be noted that Appellants appear to advance contradictory theories of racial discrimination. *See* Appellants' Br. (Doc. 26), at 6, 35, 39, 44, 46, 51 (accusing the District of engaging in racial balancing); *id.* at 44, 48–49 (arguing that the changes to the 2022 Admissions Process specifically benefitted Black and Hispanic students).

[22] The incorrect figures cited by Appellants appear to be the number of Hispanic, Multi-Racial, and White students who actually *accepted* admissions offers to Palumbo—not the number of admissions offers that were *extended* as Appellants suggest. Beyond contradicting the data cited in their own brief, the exact figures Appellants provide correspond to the number of students from these three racial groups who accepted admissions offers provided by Appellees. *See* Appx143 (Table D to

Appellants also chose not to retain an expert to analyze the limited data they do offer or determine whether the data showed any statistically significant changes. Some sort of analysis as to the statistical significance of data, typically through an expert, normally is required to establish discriminatory impact. *See Bos. Parent Coal.*, 996 F.3d 37, 46 (1st Cir. 2021) ("Second, even as to its preferred comparators, plaintiff offers no evidence establishing that the numerical decrease in the overrepresentation of White and Asians under the Plan is statistically significant. A party claiming a disparate impact generally does not even get to first base without such evidence."). Failure to adduce expert statistical analysis "certainly cut[s] against finding that the degree of disproportionate effect contributes to plaintiff's likelihood of success on the merits." *Id.*; *see also* Appx23, at n.6. Appellants' lack of expert testimony or attempt to establish statistical significance of their

---

Dr. Wolford Decl.). Appellants' error results in an incorrect calculation that the number of admissions offers to White students at Palumbo under the 2022 Admission Process was 132 less than the previous year, a 72.1% decline. Appellants' Br. (Doc 26), at 25. But the correct figures show that only 32 fewer offers were made to White students at Palumbo for the 2022-23 school year, a decline of only 17.5% compared to the 2021-22 school year. Appellants' material error on this point underscores the unreliable nature of their proffered data.

proffered data underscores the lack of genuine dispute with respect to discriminatory impact.

**B.**  ***Appellees' data demonstrates that the 2022 Admissions Process had a race-neutral impact.***

In contrast to Appellants' failure to meet their burden on this element of their claim, the District offered compelling evidence that the 2022 Admissions Process had no discriminatory effect. Indeed, the District, not Appellants, supplied the only evidence comparing the racial composition of eligible students who applied for admission to those actually offered admission. Appx30, at n.11. Dr. Tonya Wolford ("Dr. Wolford"), the Chief of District Evaluation, Research, and Accountability, conducted precisely the type of analysis called for by the Fourth and First Circuit decisions discussed above.

Her unrebutted analysis shows the success rates for students from different racial groups who were offered admission, compared to the percentage of eligible applicants from those same racial groups, as nearly identical. Appx30, at n.11; Appx125–135 (Dr. Wolford Decl.); Appx145 (Table E to Dr. Wolford Decl., showing proper analysis of success rate for the 2022 Admissions Process). Dr. Wolford's analysis demonstrated, for example, that under the 2022 Admissions Process, 22% of eligible

applicants to Central were Black and 22% of the students offered admission were Black. Appx145. At the same time, 26% of eligible applicants to Central were White and 26% of the students admitted were White. *Id.*

What Appellees' data does show is that the changes in the 2022 Admissions Process resulted in percentage increases in enrollment of eligible students (regardless of their race) residing in one of the six historically underrepresented zip codes at each of the four criteria-based schools at issue here for the 2022–23 school year:

- Carver: 14.92% of total enrollment in 2022–23 compared to 12.89% in 2021–22

- Central: 14.7% of total enrollment in 2022–23 compared to 5.66% in 2021–22

- Masterman: 8.85% of total enrollment in 2022–23 compared to 1.75% in 2021–22

- Palumbo: 7.8% of total enrollment in 2022–23 compared to 5.38% in 2021–22

*See* Appx141 (Table C to Dr. Wolford Decl.).

While Appellees do not bear the burden of establishing that the 2022 Admissions Process did not have a racially discriminatory impact and the District Court did not rely on this data in granting Appellees

summary judgment, Appx30, at n.11, Appellees' relevant data and analysis in the record establishing the race-neutral impact of the 2022 Admissions Process provides another basis to affirm.

## C. *The record contains no other evidence of racially discriminatory impact.*

Beyond their incomplete data and legally insufficient analysis, Appellants can point to no other evidence demonstrating that the 2022 Admissions Process caused "similarly situated individuals of a different race [to be] treated differently." *See Lower Merion*, 665 F.3d at 550. Rather, the record establishes that eligible students residing in the six zip codes were treated identically regardless of their race: They were automatically admitted to the criteria-based school to which they applied. Appx866–67 ¶ 25; Appx147 ¶ 25. The same is true for eligible students residing outside of those zip codes, all of whom were treated identically regardless of their race: They were all entered into the randomized, computerized lottery for admission to the criteria-based schools to which they applied. Appx866 ¶ 24. Appellants do not dispute these facts. *See Lower Merion*, 665 F.3d at 550 (finding appellants failed to meet their burden to show discriminatory impact where all students within the

"Affected Area" were assigned to one school and all other students were assigned to a different school regardless of race).

Consistent with this Court's decision in *Lower Merion* and with the First and Fourth Circuits' analysis, the District Court correctly found that it "cannot find a genuine dispute of material fact on the question of racially discriminatory impact based on that." Appx31 (citing *Lower Merion*, 665 F.3d at 551) (finding no discriminatory impact where "there is no possibility that any of the Students Doe will be denied a school assignment because of his or her race" because the school redistricting plan at issue "imposes no racial barrier and assigns student on an equal basis—geography").

## II. Because the record evidence establishes that the changes to the 2022 Admissions Process were not motivated by a discriminatory intent or purpose, the District Court's ruling should be affirmed.

To establish a genuine dispute of material fact on the discriminatory "purpose" prong, Appellants must adduce evidence showing that "the decisionmaker [] selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' the action's beneficial or adverse effects 'upon an identifiable group.'" *See Lower Merion*, 665 F.3d at 551 (citing *Pers. Adm'r of Mass. v. Feeney*, 442

U.S. 256, 279 (1979)); *see also Antonelli v. N.J.*, 419 F.3d 267, 274 (3d Cir. 2005). Here, the District Court correctly discerned that the "evidence uniformly demonstrates that the changes to the admissions process were not motivated by a racially discriminatory purpose." Appx33. And this provides an independent ground to affirm the District Court.

"In *Arlington Heights*, the Supreme Court outlined how courts should determine whether a discriminatory purpose was a motivating factor." *Id.* at 552 (citing 429 U.S. at 266–68). "The determination requires a 'sensitive inquiry' into the available 'circumstantial and direct evidence of intent,' including: (1) whether the official action has a racially disproportionate impact; (2) the historical background of the decision; and (3) the legislative or administrative history of the decision." *Id.* at 528 (citing 429 U.S. at 266–68). "[T]he mere awareness or consideration of race should not be mistaken for racially discriminatory intent or for proof of an equal protection violation." *See id.* [23]

---

[23] Moreover, although this issue is not presented in this case, even if a school district desires more racially and ethnically diverse school enrollments, strict scrutiny still does not apply to race neutral measures. *See Bos. Parent Coal. for Acad. Excellence Corp. v. Sch. Comm. of City of Bos.*, 996 F.3d 37, 48–49 (1st Cir. 2021) (citing *Parents Involved*, 551 U.S. at 789 (Kennedy, J., concurring); *Tex. Dep't of Hous. & Cmty. Affs. v. Inclusive Communities Project, Inc.*, 576 U.S. 519, 545 (2015) (quotation

### A. There is no evidence that the changes to the 2022 Admissions Process had a racially disproportionate impact.

As discussed above, the record is devoid of evidence probative of discriminatory impact and the appropriate analysis provided by the District shows its absence.

Indeed, if, as Appellants repeatedly and falsely contend, the District were intent on "racially balancing," such an effort was a complete failure, since the enrollments of the affected schools vary widely among themselves and depart substantially from the racial/ethnic composition of the District as whole. *See* Appellants' Br. (Doc. 26), at 6, 35, 39, 44, 46, 51. The lack of attempted "racial balancing" is evident in comparing the District's enrollment by race to that of the four criteria-based schools in the 2022–23 school year, as depicted in the table below:

| 2022–23 Enrollment by Race | | | | | |
|---|---|---|---|---|---|
| | Asian | Black | Hispanic | Multi-racial | White |
| District | 10% | 48% | 26% | 5% | 11% |
| Palumbo | 29% | 30% | 17% | 8% | 17% |
| Carver | 17% | 54% | 15% | 6% | 8% |
| Central | 30% | 31% | 15% | 5% | 19% |

omitted)) (school districts may pursue diversity using race-neutral means, such as geography, that do not engage in individual racial classification).

| Masterman | 40% | 18% | 7% | 9% | 27% |

*See* Appx137. Not only are the racial and ethnic compositions of the four schools wildly different from each other, but also none of them comes close to reflecting the racial and ethnic composition of the District as whole. The first *Arlington* factor therefore supports the District Court's conclusion that Appellants failed to establish discriminatory intent.[24]

**B.** **The historical background of the decision to change the 2022 Admissions Process further indicates the lack of discriminatory intent.**

Historical background may provide evidence of discriminatory intent when "it reveals a series of official actions taken for invidious purposes." *Arlington Heights*, 429 U.S. at 267 ("Departures from the normal procedural sequence also might afford evidence that improper purposes are playing a role. Substantive departures too may be relevant, particularly if the factors usually considered important by the decisionmaker strongly favor a decision contrary to the one reached.").

---

[24] As noted by the Supreme Court, "The impact of the official action whether it 'bears more heavily on one race than another . . . may provide an important starting point. Sometimes a clear pattern, unexplainable on grounds other than race, emerges from the effect of the state action even when the governing legislation appears neutral on its face.'" *Arlington Heights*, 429 U.S. at 266.

Here, the record establishes that the 2022 Admissions Process was changed in connection with a routine, annual review of the school selection process. *See, e.g.*, Appx526–27 (Jubilee Dep. at 37:2–38:1); Appx645 (*id.* at 156:17–23). The timing of the review was consistent with prior practices and not a departure from normal procedures. Appx526 (*id.* at 37:5–6) ("[E]very year the school selection process undergoes a review . . ."); Appx526–27 (*id.* at 37:20–38:1) ("Q. Okay. So your testimony is the school selection, the change in the school selection process that brings us here today, was borne of a routine review, annual review of the school selection process that occurs each year in the City of Philadelphia — or the School District of Philadelphia? A. Correct.").

Impetus for the changes to the 2022 Admissions Process, in large part, grew out of the Pew Study results. Pew, an independent organization, identified issues with the District's existing admissions processes, including school-level subjectivity, evidence of anomalous admissions decisions (*e.g.*, students being admitted to criteria-based schools who did not meet the eligibility criteria), and geographic differences in students' level of participation in the criteria-based admissions process. *See* Appx38–39. These issues ultimately led the

District to centralize the admissions process and to develop the zip code priority.

Centralizing the application process and implementing a lottery also were designed to enhance standardization and increase objectivity, as well as mitigate anomalous decisionmaking at the school level. *See, e.g.*, Appx219–21 (Lynch Dep. at 39:23–41:19); Appx231 (*id.* at 51:5–23); Appx666 (Jubilee Dep. at 177:5–11); Appx604 (Jubilee Dep. at 115:15–23); Appx612 (*id.* at 123:4–18); Appx668–69 (*id.* at 179:20–180:3). As the District Court noted in denying Appellants' motion for preliminary injunction, "Consideration of whether prior practices permitted bias and a desire to safeguard against potential discrimination by moving to an objective process for selecting which students are admitted to schools they are eligible to attend does not constitute discriminatory intent—it constitutes the opposite." Appx37 (citing ECF No. 50, at 15).

Selection of zip codes likewise was based solely on enrollment rates of eligible students across geographic areas. Appx36; Appx233–34 (Lynch Dep. at 53:25–54:15); Appx612 (Jubilee Dep. at 123:4–18); Appx641 (*id.* at 152:5–24); Appx670 (*id.* at 181:13–19); Appx670 (*id.* at 181:20–23); Appx677 (*id.* at 188:3–7); *see also* Appx613 (*id.* at 124:1–8). The racial

compositions of the six zip codes also varied. *See* ECF 36–2 (racial demographics of each zip code); Appellants' Br. (Doc. 26), at 12–13 (acknowledging that many of the District's zip codes that did not receive priority preference for enrollment were "overwhelmingly populated by minorities"). The zip code priority applied solely based on geography and similar policies have recently been upheld as legitimate and race-neutral. *See Coal. for TJ*, 68 F.4th 864 (4th Cir. 2023), *cert. denied,* 218 L. Ed. 2d 71 (Feb. 20, 2024); *Bos. Parent Coal.*, 89 F.4th 46 (1st Cir. 2023), *cert. denied,* 145 S. Ct. 15 (2024).

Finally, as the District Court observed, if racial balancing were the intended goal, the District's decision to use the same zip code preference for each of the four schools would be an ineffective means of achieving that goal, given the differences in the racial and ethnic composition of each of their enrollments.[25]

---

[25] Even if there were evidence that the District had been aware of the racial composition of these zip codes in making changes to the 2022 Admissions Process (which there is not), that awareness would not trigger strict scrutiny. *Lower Merion*, 665 F.3d at 552 ("Even conscious awareness on the part of the [decisionmaker] that the [policy] will have a racially disparate impact does not invalidate an otherwise valid law, so long as that awareness played no causal role" in the adoption of the policy.") (citation omitted).

### C. The relevant legislative or administrative history of the decision to change the 2022 Admissions Process also supports the District Court's conclusion on intent.

Evidence of legislative history generally consists of "contemporary statements by members of the decision-making body, minutes of its meetings, or reports," and may also include "testimony" of "members" of the decision-making body. *Arlington Heights*, 429 U.S. at 268. In this case, the legislative history consists primarily of the relevant portions of the subsequent deposition testimony of Dr. Hite, Dr. Jubilee, and Ms. Lynch, all of whom confirm that changes to the 2022 Admissions Process were free from discriminatory intent. Appx36 (the District Court determined that "the testimony that Ms. Lynch and Dr. Jubilee gave at the Committee on Education hearing on December 15, 2021, does not evince any racially discriminatory motive"); Appx233–34 (Lynch Dep. at 53:25–54:15) ("A. The School District of Philadelphia implemented the Zip code priority in order — in order to give qualified students that met eligibility that were low in their representation at four schools, students with residential — coming from communities that were not represented in these schools or that had very, very low representation."); Appx612 (Jubilee Dep. at 123:4–18) ("Q. Do you know why the Zip code

requirement doesn't apply to all criteria-based schools? A. So when we went through this iteration, this particular school selection process, one of the things, as I named before, that we identified was the social — socially constructed feeder patterns where we recognized that there were a number of students throughout our District who qualified for eligibility for these five schools, but were not participating in the application process at the same rate as students from other Zip codes; and so as one way to ensure greater access and inclusion for qualified students who applied to these schools, the Zip code preference was applied based on the six Zip codes that had the least amount of qualified students participating in the process."); Appx641 (*id.* at 152:5–24) ("Q. Okay. Do you know why there were no Zip codes from West Philadelphia? A. I mean, if it's based off of the three-year trend of participation, then if it didn't show up in the six it's likely because there either weren't eligible students in those Zip codes and/or there were eligible students in those Zip codes but the participation rate wasn't the lowest."); Appx670 (*id.* at 181:13–19); Appx670 (*id.* at 181:20–23); Appx677 (*id.* at 188:3–7); *see also* Appx613 (*id.* at 124:1–8).

The deposition testimony also demonstrates that the equity review is a routine, race-neutral tool used to evaluate potential inequities in policies and practices. Appx526–27 (Jubilee Dep. at 37:2–38:1); Appx645 (*id.* at 156:17–23). The equity review did not result in any changes to the 2022 Admissions Process that were motivated by race. Appx34–35. Courts have consistently upheld the use of equity-focused reviews as a legitimate means of ensuring fairness in public policy. *See, e.g.*, *Bos. Parent Coal.*, 89 F.4th at 52 (noting that, prior to adopting race-neutral admissions policy changes, the defendant "convened a Working Group to recommend revised admissions procedures" based on the "potential impacts of different proposed methodologies on students" in conjunction with its "equity impact statement").

The testimony that Ms. Lynch and Dr. Jubilee gave at the City Council of Philadelphia Committee on Education hearing on December 15, 2021, also does not evince any racially discriminatory motive for the 2022 Admissions Process. Despite Appellants' attempt to capitalize on cherry-picked statements from Dr. Jubilee, it is apparent from the record that her statements, as they appear in Appellants' Brief, are taken out of context. Dr. Jubilee testified that the vast majority of

her statements before the City Council were not related to the 2022 Admissions Process. Appx544–45 (Jubilee Dep. at 55:7–56:5); Appx546 (*id.* at 57:9–25); Appx548–49 (*id.* at 59:22–60:15); Appx550 (*id.* at 61:1–25); Appx546–47 (*id.* at 73:25–74:8); Appx576 (*id.* at 87:2–21); Appx589–90 (*id.* at 100:10–101:15). With respect to the three paragraphs of her testimony reproduced in Appellants' Brief, Dr. Jubilee clarified that only the third paragraph was related to the school admissions processes at all. *See* Appellants' Br. (Doc. 26), at 21; Appx601–02 (Jubilee Dep. at 112:20–113:6). There is no mention of race in that portion of Dr. Jubilee's statement. Appellants' Br. (Doc. 26), at 21; *see also* Appx602–03 (Jubilee Dep. at 113:7–114:25) (testimony from Dr. Jubilee confirming this portion of her statement related to inequities caused by differences in "socioeconomic" and "political power," not race).

Ms. Lynch's public testimony is equally immaterial. First, Appellants' claim that Ms. Lynch "admitted that 'racial dynamics' (as well as other factors) played a role" in the 2022 Admissions Process at the four schools at issue is inaccurate and misleading. *See* Appellants' Br. (Doc. 26), at 26. Ms. Lynch was responding to Councilman Oh's question about why Parkway, a different criteria-based high school with a 72.4%

Black enrollment, "need[ed] to be overhauled." ECF No. 32–6 (full transcript of the City Council Hearing, submitted to the District Court as an exhibit to Appellants' motion for a preliminary injunction), at 120:9–23.[26] Ms. Lynch also explained that the District considered geography—not race—when selecting the zip code preference. *Id.* at 120:24–121:22 ("Okay. You're looking at the racial demographic of each of these schools . . . The zip codes are not reflective of the demographics you're talking about. The zip codes are reflective of students living in areas of the City that had the qualifications to attend, but the lowest representation in four of our schools.").

### D. Appellants' reliance on out-of-context evidence of District employees' personal beliefs and mischaracterized documents unrelated to the 2022 Admissions Process cannot save their unsupported intent argument.

As the District Court noted the "various snippets of testimony and documentary evidence" strung together by Appellants do not create a "genuine dispute on the intent prong." *See* Appx7.

---

[26] Given their penchant for presenting information out of context, it is notable that Appellants only include a brief portion of the City Council transcript in their appendix. Appx740–47 (containing only seven pages of the 302-page transcript).

First, Appellants' characterization of the "Goals and Guardrails" document as a "smoking gun" immediately falls apart upon review of the document itself, which does not even mention the 2022 Admissions Process. Appellants' Br. (Doc. 26), at 37. Dr. Jubilee's testimony also confirms that the "Goals and Guardrails" document was unrelated to the racial demographics of the four criteria-based schools involved in this case. Appx620 (Jubilee Dep. at 131:14–132:24); Appx623–25 (*id.* at 134:13–136:12). "Indicator 4.1" reads:

> Among 8th grade students who are qualified to attend [the criteria-based high schools], the percentage who are Black/African American or Hispanic/Latinx will grow from 33.8% in August 2020 to at least 52.0% (making progress towards being proportional to population as a whole) by August 2026.

Appx9 (citing ECF No. 44–5, at 4). As the District Court correctly concluded, "Indicator 4.1 reflects is [sic] a legitimate policy goal of improving academic outcomes for Black and Hispanic students. And that is not a racially discriminatory motive." Appx37–38.[27]

---

[27] Indicator 4.1 related to academic achievement, not enrollment demographics. Appellants appear to misapprehend the import of Indicator 4.1 percentage academic targets. They apparently envision a zero-sum, if-then proposition; if Black and Hispanic students make academic progress, then White and Asian students' achievement outcomes will correspondingly suffer. Surely Appellants cannot be

Second, nothing in the Anti-Racism Declaration (the "Declaration") creates a genuine dispute as to whether the District implemented the changes to the 2022 Admissions Process for a racially discriminatory purpose. Appx679; *see also* Appx36 (correctly determining that no "fair-minded jury" could decide this issue in Appellants' favor). Nothing in the Declaration, nor any of the deposition testimony cited by Appellants about the Declaration, ties the 2022 Admissions Process to race.[28] Appx544–45 (Jubilee Dep. at 55:13–56:5); Appx550 (*id.* at 61:1–19) ("Again, when the statement on antiracism was written, it was agnostic to one exclusive process, policy or procedure."). Indeed, the Declaration itself does not even mention the 2022 Admissions Process. *See* Appx679.

---

telling the Court it is not fair for a group of students to ever see improved outcomes or get closer to higher achieving peer groups? If so, would it be unlawful to adopt a new reading or math curriculum or more challenging course offerings across all K–8 and middle schools, if it meant more students meet the eligibility criteria for criteria-based schools, applied to them, and participated in a lottery on an even footing with other students?

[28] Contrary to Appellants' assertions, "anti-racism" and "equity" are not equivalent to racial balancing or any other form of illegal discrimination, despite Appellants' attempts to conflate these concepts. *See* Appx576–77 (Jubilee Dep. at 87:7–88:3) ("[H]aving those individuals be present in number is not necessarily the same thing as being antiracis[t]."). Rather, they are more akin to nondiscrimination and fairness.

Third, Appellants cannot rely on testimony that is taken out of context and irrelevant to the 2022 Admissions Process to establish discriminatory intent.[29] For example, Dr. Hite's statements about "disproportionality," which were directly elicited by Appellants' counsel, were general statements unrelated to the 2022 Admissions Process in any way. *See* Appellants' Br. (Doc. 26), at 14–15; Appx393–94 (Hite Dep., at 42:5–43:12) (explaining that "disproportionality," particularly with respect to disciplinary incidents, was one example of "racial inequity" "within the School District of Philadelphia" during Dr. Hite's time as Superintendent); Appx394 (*id.* at 43:13–23) (explaining that disproportionality is not exclusive to race, and could be based on "gender," "poverty," and other "demographics").

The same is true of Appellants' mischaracterization of Dr. Hite's testimony relative to the Anti-Racism Declaration and disproportionality. *See* Appellants' Br. (Doc. 26), at 40 ("he testified that the 'norms, values, and structures' that the Anti-Racism declaration

---

[29] Appellants' Statement of the Case includes a section inappropriately titled, "Evidence of the Defendants' Racial Motivations," which serves only to catalogue deposition testimony and other statements elicited by Appellants' counsel that are wholly unrelated to the 2022 Admissions Process.

demands be changed are systems that create disproportionality"). These statements were elicited by Appellants' counsel in context of the Anti-Racism Declaration and it is clear from the deposition transcript that these statements again were unrelated to the 2022 Admissions Process. *See* Appx407 (Hite Dep., at 56:16–18) (the Anti-Racism Declaration "didn't necessarily speak to policies within the school district"); Appx415–16 (*id.* at 64:3–65:19) (asking Dr. Hite questions based on quotations from the Anti-Racism Declaration).

Appellants' citations to Ms. Lynch's statements about "the lack of achievement among Black and Brown students" are similarly taken out of context, as Ms. Lynch specifically noted that these statements reflected her "personal opinion." Appellants' Br. (Doc. 26), at 16–17; 41; Appx278 (Lynch Dep., at 98:5–13). Ms. Lynch specifically clarified that this opinion had no connection to the 2022 Admissions Process. *See* Appx299–300 (*id.* at 119:24–120:3) ("Q. Was the school selection process changed to address the lack of achievement of Black and African American students relative to their Asian and White peers? A. No."). Ms. Lynch further still clarified that the District's goal was to increase the number of students who were eligible to attend criteria-based schools,

not to increase the number of admitted students in any particular race. Appx292–93 (*id.* at 111:13–113:19).

Appellants' claim that Dr. Jubilee believes "certain racial groups have power over others" is similarly misleading and irrelevant. Appellants' Br. (Doc. 26), at 18–19. In her deposition, Appellants' counsel directly asked Dr. Jubilee a series of yes-or-no questions, and she answered them based on her personal beliefs about the United States as a whole. *See* Appx549 (Jubilee Dep., at 60:22–25) ("Q. Do certain racial groups have power over each other? A. So if you take it in the historical context of the United States, then yes."); Appx551 (*id.* at 62:5–13) ("Q. Now, explain to me what racial groups have — who are the racial groups who have power and — over other racial groups? . . . THE WITNESS: In the context of the United States, those who identify racially as White have historically had power over groups that identify racially as nonWhite."); Appx552 (*id.* at 63:2–9) ("Q. Okay. And so traditionally — do Whites — you said historically in America. Do Whites still have power — I mean, what about now, do Whites still have power over Blacks? . . . THE WITNESS: So the context of historical still plays a role, so yes."). Dr. Jubilee's personal views on the history of race in America have no

rational relationship to the 2022 Admissions Process and are not evidence of discriminatory intent.

Appellants' characterization of Dr. Jubilee's comments about "colorblindness" are also taken out of context. *See* Appellants' Br. (Doc. 26), at 20, 42. Appellants' counsel sought Dr. Jubilee's general opinion on "colorblindness" and, initially, Dr. Jubilee was confused as to what he meant and why her opinion on "colorblindness" was relevant. Appx596–98 (Jubilee Dep., at 107:7–109:25) ("Is colorblindness one of the institutional norms that needs to be dismantled? A. I don't know about colorblindness being seen as an institutional norm. Where are you getting that from? Can you define that for me?"). Appellants additionally fail to note that Ms. Jubilee refused to accept their proffered definition of "colorblindness," and instead provided her personal opinions about colorblindness on the basis of her definition. Appx599 (*id.* at 110:1–24) ("[C]olorblindness, as I understand it, is an erasure of racial identity, which is less about what's on the paper and more about ideology. So in that context it doesn't show up in the work that I do in the School District of Philadelphia . . . Q. Okay. So let me — let me offer a definition of colorblindness in a different way. Okay. When I use the term — as I said,

when I use the term 'colorblindness,' I'm referring to an access to a system where an individual's race, ethnicity or other identity is not considered. Okay? A. That's your definition."). Dr. Jubilee explained that "colorblindness" is not a concept she uses in her work for the District and therefore has no relevance to the 2022 Admissions Process. Appx598–99 (*id.* at 109:23–110:7). Despite Appellants' misrepresentations of Dr. Jubilee's testimony, her responses to questions about her personal opinion on the term "colorblindness" are irrelevant and do not provide any evidence of discriminatory intent with respect to the 2022 Admissions Process.

Appellants' reliance on out-of-context and irrelevant testimony fails to establish any evidence of discriminatory intent in the 2022 Admissions Process. The record demonstrates that the statements Appellants cite are either mischaracterizations or personal opinions that lack connection to the 2022 Admissions Process.

In sum, the record evidence does not show any racially discriminatory intent in the adoption of the 2022 Admissions Process. Rather, the evidence overwhelmingly confirms that the changes were made to centralize the process, remove subjectivity, and increase the

opportunity for eligible students from across all geographic areas of the District to attend criteria-based schools, including the four at issue.

## III. The 2022 Admissions Process Satisfies Rational Basis Review

Appellants do not attempt to argue that the changes to the 2022 Admissions Process should fail under rational basis review. Moreover, the District Court correctly determined that the 2022 Admissions Process was changed for the legitimate, race-neutral purposes of creating a more fair and objective process and increasing access to criteria-based schools for eligible students from geographic areas that were statistically underrepresented in the criteria-based schools. Appx3–41.

## CONCLUSION

This Court should affirm the District Court's grant of summary judgment for the District.

March 17, 2025

Respectfully submitted,

/s/ John W. Borkowski

JOHN W. BORKOWSKI
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Ste. 2200
Chicago, IL 60606
Phone: (312) 655-1500
Fax: (312) 655-1501
john.borkowski@huschblackwell.com

ALEKSANDRA O. RUSHING
8001 Forsyth Blvd., Ste. 1500
St. Louis, MO 63105
Phone: (314) 345-6275
Fax: (314) 480-1505
aleks.rushing@huschblackwell.com


LYNN R. RAUCH
THE SCHOOL DISTRICT OF
PHILADELPHIA
440 N. Broad St., Ste. 313
Philadelphia, PA 19130
Phone: (215) 400-6742
Fax: (215) 400-4121
lrauch@philasd.org

*Counsel for Defendants-Appellees*

# CERTIFICATE OF BAR MEMBERSHIP

The undersigned hereby certify that they are members of the U.S.

Court of Appeals for the Third Circuit.

Dated: March 17, 2025

/s/ *John W. Borkowski*

JOHN W. BORKOWSKI
HUSCH BLACKWELL LLP
120 S. Riverside Plaza, Ste. 2200
Chicago, IL 60606
Phone: (312) 655-1500
Fax: (312) 655-1501
john.borkowski@huschblackwell.com

ALEKSANDRA O. RUSHING
8001 Forsyth Blvd., Ste. 1500
St. Louis, MO 63105
Phone: (314) 345-6275
Fax: (314) 480-1505
aleks.rushing@huschblackwell.com

LYNN R. RAUCH
SCHOOL DISTRICT OF
PHILADELPHIA
440 N. Broad St., Ste. 313
Philadelphia, PA 19130
Phone: (215) 400-6742
Fax: (215) 400-4121
lrauch@philasd.org

*Counsel for Defendants-Appellees*

# CERTIFICATE OF COMPLIANCE

1.    This document complies with the type-volume limitation of Fed. R. App. P. 32(g) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f):

[X] this document contains 12,601 words, or

[ ] this brief uses a monospaced typeface and contains ____ lines of text.

2.    This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[X] this document has been prepared in a proportionally spaced typeface using Microsoft Word 2020 in 14-point Century Schoolbook font, or

[ ] this document has been prepared in a monospaced typeface using <state name and version of word processing program> with <state number of characters per inch and name of type style>.

Dated: March 17, 2025          /s/ *John W. Borkowski*

*Counsel for Defendants-Appellees*

# CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2025, I electronically filed the foregoing using the Court's CM/ECF system, which will send notification to all counsel and parties receiving electronic notice. On the same day, a copy of the foregoing was mailed via first-class, prepaid U.S. Mail to:

Walter S. Zimolong
Zimolong LLC
Post Office Box 552
Villanova, Pennsylvania 19085
(215) 665-0842
wally@zimolonglaw.com

Reed D. Rubinstein
America First Legal Foundation
611 Pennsylvania Avenue SE #231
Washington, DC 20003
(202) 964-3721
reed.rubinstein@aflegal.org

Jonathan F. Mitchell
Mitchell Law PLLC
111 Congress Avenue, Suite 400
Austin, Texas 78701
(512) 686-3940 (phone)
(512) 686-3941 (fax)
jonathan@mitchell.law

*Counsel for Plaintiffs-Appellants*

Dated: March 17, 2025                    */s/ John W. Borkowski*

                                        *Counsel for Defendants-Appellees*